## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: **21-01830-eg**

### ORDER

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/06/2023**



Entered: 03/06/2023

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 21-01830-EG |
| Dana Michelle Richardson, | Chapter 13 |
| Debtor(s). | **ORDER DISMISSING CASE WITH PREJUDICE FOR ONE YEAR** |

**THIS MATTER** came before the Court for a hearing on March 2, 2023 pursuant to the Order to Appear and Show Cause[1] prompted by the *Motion for Order to Appear and Show Cause* ("Motion") filed by Chapter 13 Trustee James M. Wyman (the "Trustee").[2] The Trustee's Motion raised concerns regarding the possible altering and forgery of the Court's order entered on December 14, 2022 authorizing Dana Michelle Richardson ("Debtor") to incur debt to finance the purchase of a vehicle (the "Order to Incur Debt").[3] The Debtor filed a Response to the Order to Show Cause admitting to altering the Order.[4] The Trustee, the Debtor, and Debtor's counsel were present at the hearing. Having considered the pleadings before it, the explanations provided at the hearing, and the record before it, the Court finds and concludes as follows:

**PROCEDURAL BACKGROUND & UNCONTESTED ALLEGATIONS**

The Debtor sought relief under Chapter 13 of the Bankruptcy Code on July 12, 2021.[5] Her schedules reflect assets of approximately $301,875.02 and liabilities of $340,820.00, including $299,588.69 in secured debt. Schedule B states she owns a 2015 Volvo and that American Credit Acceptance has a lien on the car.[6] According to the claims register, claims totaling $304,342.00

---

[1] ECF No. 46, entered Jan. 6, 2023.
[2] ECF No. 43, filed Jan. 5, 2023.
[3] ECF No. 41.
[4] ECF No. 52, filed Jan. 11, 2023.
[5] The Debtor had previously filed a Chapter 13 in 2019 (Case No. 19-05721-JW) which was dismissed on July 1, 2021 for the Debtor's failure to make plan payments.
[6] ECF No. 1.

1

were filed, with $300,677.00 in secured claims and $3,665.00 in unsecured claims. The Debtor proposed a Chapter 13 plan which was confirmed on October 27, 2021.[7] On December 12, 2022, the Debtor filed a proposed order with the Trustee's consent authorizing the Debtor "to incur debt to finance the purchase of a vehicle for $25,000.00 with payments no more than $500.00 per month."[8] She sought the financing to replace her vehicle that was no longer running and needed substantial and expensive repairs. Two days later—on December 14, 2022—the Court entered the consensual Order to Incur Debt.[9]

While the Debtor found a vehicle that she believed would be a good option, the Debtor needed financing in an amount greater than what had been authorized by the Court to purchase it. Accordingly, she spoke with her bankruptcy counsel about the timing of obtaining a new order permitting a higher amount of debt to be incurred and higher monthly payments than what had already been approved in the Order to Incur Debt. Instead of pursuing that route, and after being unable to find a vehicle that could be financed within the amounts authorized by the Court, the Debtor decided to use an application to alter the Court's entered Order to Incur Debt to authorize her "to incur debt to finance the purchase of a vehicle for $30,000.00 with payments no more than $700.00 per month".[10]

On December 23, 2022, the Debtor signed and executed a Retail Installment Sale Contract for the purchase of the newer vehicle—a 2019 Toyota C-HR—requiring a loan of $27,555.99 and monthly payments of $699.89.[11] On December 27, 2022, an employee of the lender through which the Debtor obtained financing of the vehicle emailed the Trustee indicating that the lender had

---

[7] ECF No. 31.
[8] ECF No. 39.
[9] ECF No. 41.
[10] The alterations are underlined.
[11] ECF No. 47, filed Jan. 6, 2023.

2

received two versions of the order authorizing the Debtor to incur debt with different amounts, and asking the Trustee to verify which order was correct. The Trustee informed the lender that the only authorization the Debtor had received to finance a vehicle was that contained in the Order to Incur Debt. On January 6, 2023, the Court issued the Order to Appear and Show Cause ordering that the Debtor and her counsel appear before the Court to explain the Debtor's actions and to show cause "why the case should not be dismissed for cause under 11 U.S.C. § 1307(c) for bad faith conduct and/or why further sanctions should not be imposed, including the dismissal of the case with prejudice."

In her Response, the Debtor acknowledged her actions and indicated she would agree to "any sanctions or other order of the court." Moreover, "as a show of good faith and contrition", the Debtor indicated she would file a motion to incur debt *nunc pro tunc* in the higher amount, amend Schedules I and J showing her ability to fund the vehicle she purchased with the altered order, and propose an amended plan to increase the dividend to general unsecured creditors to 100% of the allowed claims. On January 11, 2023—after the Order to Appear and Show Cause had been entered—the Debtor filed a Motion to Incur Debt/Obtain Credit requesting *nunc pro tunc* authorization to incur debt in the amounts already incurred to purchase the Toyota.[12] On the same date, the Debtor also filed Amended Schedules I and J reflecting an increase in her monthly income from $5,161.13 to $7,044.66 and in her net monthly income from $3,033.30 to $3,425.01.[13] Lastly, she filed a Post-Confirmation Modified Chapter 13 Plan and Motion to Modify Confirmed Chapter 13 Plan pursuant to 11 U.S.C. § 1329(a) to increase the dividend paid on general unsecured claims to 100%.[14]

---

[12] ECF No. 53.
[13] ECF No. 56.
[14] ECF Nos. 54 and 55, filed Jan. 11, 2023.

At the hearing, the Debtor admitted that she altered the Court's Order to Incur Debt and apologized for her actions. The Debtor also indicated that, to show the Court her good faith and contrition, she had returned the vehicle she had financed with the forged order to the dealership.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and this Court may enter a final order. The Court here is faced with a rare situation and is left to decide what the proper remedy should be when a Chapter 13 debtor alters an order of the Court and proposes to modify her Chapter 13 confirmed plan to increase distributions to unsecured creditors to pay them in full.

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Dubois v. Atlas Acquisitions LLC (In re DuBois)*, 834 F.3d 522, 526 (4th Cir. 2016) (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007)). The integrity of the bankruptcy system is sacrosanct. A judicial system cannot operate where parties appearing before it are dishonest or—as is the case here—alter a previously entered order of the Court, in essence forging the Judge's signature to modify terms previously authorized. Moreover, bankruptcy courts have the inherent power to sanction parties who abuse the litigation process in bad faith. 11 U.S.C. § 105(a); *Law v. Siegel*, 571 U.S. 415 (2014) (noting that a bankruptcy court has the inherent power to sanction abusive litigation practices but, in exercising it, may not contravene specific statutory provisions); *Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 149 (4th Cir. 1996) ("the Bankruptcy Code, both in general structure and in specific provisions, authorizes bankruptcy courts to prevent the use of the bankruptcy process to achieve illicit objectives."); *Blue Cross Blue Shield of N.C. v. Jemsek Clinic, P.A. (In re Jemsek Clinic, P.A.)*, 850 F.3d 150 (4th Cir. 2017).

4

Section 1307(c) of the Bankruptcy Code provides that the Court may, on request of a party in interest or the United States trustee and after notice and a hearing, convert a chapter 13 case to a case under chapter 7, or dismiss a chapter 13 case, whichever is in the best interests of creditors and the estate, for "cause," and provides a non-exclusive list of grounds constituting cause. Although 11 U.S.C. § 1307(c) contemplates that the Court may take this action "on request of a party in interest or the United States trustee," 11 U.S.C. § 105(a) provides "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Accordingly, the Court may dismiss a case pursuant to § 1307(c) *sua sponte*. *In re Richardson*, 643 B.R. 324, 331 (Bankr. D.S.C. 2022); *In re Brown*, 399 B.R. 162, 165 (Bankr. W.D. Va. 2009).

The analysis under § 1307(c) involves two steps:

> First, it must be determined that there is "cause" to act. Second, once a determination of "cause" has been made, a choice must be made between conversion and dismissal based on the "best interests of the creditors and the estate."

*In re Van Gompel*, 632 B.R. 730, 735 (Bankr. D.S.C. 2021) (quoting *In re Nelson*, 343 B.R. 671, 675 (9th Cir. BAP 2006)).

### A. Cause Exists Under Section 1307 to Dismiss or Convert the Case

The first factor is met here. "A Bankruptcy Court has considerable discretion in determining whether 'cause' exists." *Id.* (quoting *In re Demeza*, 567 B.R. 473, 477 (Bankr. M.D. Pa. 2017)). "Although bad faith, or a lack of good faith, is not included in this list, bad faith can constitute cause for dismissal under Section 1307(c)." *Id.* (quoting *In re Buis*, 337 B.R. 243, 250 (Bankr. N.D. Fla. 2006)). This Court has previously applied a totality of the circumstances analysis

5

for determining the absence of good faith in connection with a motion to convert or dismiss under 11 U.S.C. § 1307.  *See In re Blackmon*, 628 B.R. 804, 809 n.6 (Bankr. D.S.C. 2021); *In re McFadden*, 383 B.R. 386, 389 (Bankr. D.S.C. 2008).  While there is no set list of factors for courts to consider in conducting a "totality of the circumstances" analysis, the debtor's pre- and post-petition conduct and whether she has been forthcoming with the Bankruptcy Court are just a few of the factors that have been taken into consideration.  *In re Uzaldin*, 418 B.R. 166, 174 (Bankr. E.D. Va. 2009); *In re McDonald*, 508 B.R. 187 (Bankr. D. Colo. 2014).  The Court cannot think of any more egregious conduct than perpetrating a fraud on the Court by altering an entered order as happened here.

The Court acknowledges the Debtor's attempts to remedy her wrongdoing by seeking *nunc pro tunc* authority to finance the vehicle in the amount listed in the forged order and to modify the plan to propose that general unsecured creditors get paid their allowed claims in full.  As to the former, the Court finds the legal basis for the Debtor's request for the Court's retroactive authority to incur debt in the higher amount not only legally questionable under the Supreme Court's views of *nunc pro tunc* orders in *Roman Cath. Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 140 S. Ct. 696, 206 L.Ed.2d 1 (2020), but also offensive—granting such request would be tantamount to ratifying the Debtor's wrongdoing, which the Court is not willing to do.

While the Court finds the motion to modify the plan to be a more palatable attempt to rectify her actions for the interest of creditors, the Court will not approve it for the following reasons. Section 1329 governs modification of Chapter 13 plans after confirmation and provides, in pertinent part, that "the requirements of section 1325(a) of this title apply to any modification under subsection (a)."  11 U.S.C. § 1329(b)(1).  In turn, section 1325(a) provides, among other things, that the Court shall confirm a plan if "the plan has been proposed in good faith and not by

6

any means forbidden by law." 11 U.S.C. § 1325(a)(3). In determining whether a plan has been proposed in good faith, courts employ a similar "totality of the circumstances" test as required for section 1307(c). *See In re Pizzo*, 628 B.R. 811, 818 (Bankr. D.S.C. 2021) (internal quotation marks omitted) (quoting *In re Anstett*, 383 B.R. 380, 385 (Bankr. D.S.C. 2008) ("The object is to determine whether there has been an abuse of the provisions, purpose, or spirit of Chapter 13 in the proposal or plan."). For the same reasons as set forth above, the Court cannot find that the modified plan was proposed in good faith; thus, the modification cannot be approved. The Debtor's action in altering the terms of the Court's order are a blatant abuse of the bankruptcy process that cannot be condoned. Accordingly, the Court finds that cause exists under section 1307(c) to warrant conversion or dismissal.

### *B. Dismissal of the Case with Prejudice is the Appropriate Result*

As set forth above, the second part of the analysis under section 1307(c) is to determine whether the case should be converted or dismissed. "In determining whether conversion or dismissal is appropriate, 'the test turns on whether or not the [conversion or] dismissal is in the best interests of the debtor and the creditors of the estate, with particular emphasis on whether the [conversion or] dismissal would be prejudicial to creditors.'" *Van Gompel*, 632 B.R. at 735 (alteration in original) (quoting *In re Zimmer*, 623 B.R. 151, 162 (Bankr. W.D. Pa. 2020)). Just as the Court has the authority to dismiss a case under § 1307(c) *sua sponte*, the Court may dismiss the case with prejudice pursuant to § 105(a) and its inherent authority. *In re Ellenburg*, 639 B.R. 676, 678 (dismissing case with prejudice for one year under any chapter of the Bankruptcy Code because the Debtor's filing of a forged credit counseling certificate constituted "an attempted fraud upon the Court, [was] egregious, and warrant[ed] a significant penalty.").

After hearing the arguments of the Debtor and the Trustee, and based on a review of the schedules, it appears that the Debtor's allowed general unsecured claims are approximately $3,665.00. There are little to no non-exempt assets for a trustee to liquidate if the case was converted to Chapter 7. The Court finds that converting the case would not result in any greater recovery to the unsecured claimants as the administrative expenses of a Chapter 7 would most likely exceed any value in any non-exempt asset. Accordingly, the Court finds that dismissal is in the best interests of the estate and will dismiss the case. Further, to sanction the Debtor's egregious conduct, and after taking into consideration her attempts to mitigate her wrongdoing, such dismissal will be with prejudice for a period of one year as to any chapter of the Bankruptcy Code. Furthermore, acknowledging that Debtor's actions may constitute a crime pursuant to 18 U.S.C. § 505 or other section of the United States Code, and pursuant to the requirements of 18 U.S.C. § 3057, the undersigned will refer the matter to the United States Trustee.

**IT IS, THEREFORE, ORDERED:**

1. The above-captioned case is dismissed with prejudice for a period of one year from the entry of this Order, and the Debtor is hereby barred from refiling for bankruptcy relief under any chapter of the Bankruptcy Code during that time.

2. As a result of the case being dismissed, the Debtor's Motion to Incur Debt/Obtain Credit *Nunc Pro Tunc* (ECF No. 53) and Motion to Modify Confirmed Chapter 13 Plan (ECF No. 55) shall be deemed moot.

3. The Clerk of Court shall serve this Order on the United States Trustee for Region 4, the United States Attorney for the District of South Carolina, the Debtor, her counsel, and the Chapter 13 Trustee.